**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CESAR CONTRERAS-ARMAS, | Case No. 3:18-cv-00387-HDM-CSD |
| Petitioner, | **ORDER** |
| v. | |
| TIM GARRETT,[1] et al., | |
| Respondents. | |

Petitioner Cesar Contreras-Armas ("Petitioner" or "Contreras-Armas") filed a counseled second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 28 ("Petition").) This matter is before this Court for adjudication of the merits of the remaining grounds in the Petition.[2] For the reasons discussed below, this Court denies the Petition and a certificate of appealability.

I.      **BACKGROUND**

   A.      **Factual background**[3]

On October 12, 2013, Andrew Amezcua and his girlfriend, Carolina Hernandez, were walking outside when they saw Contreras-Armas and a few other individuals walking towards them. (ECF No. 14-5 at 5–8.) Contreras-Armas asked Amezcua, "Do you guys gang bang?" (*Id.* at 8.) Amezcua indicated that he was in the Southwest Gang. (*Id.*) Contreras-Armas, who was a

---

[1] The state corrections department's inmate locator page states that Contreras-Armas is incarcerated at the Lovelock Correctional Center. Tim Garrett is the current warden for that facility. At the end of this order, this Court directs the clerk to substitute Tim Garrett as a respondent for Respondent Renee Baker. *See* Fed. R. Civ. P. 25(d).

[2] This Court previously dismissed ground 2. (ECF No. 61.)

[3] This Court makes no credibility findings or other factual findings regarding the truth or falsity of this background information. This Court's summary is merely a backdrop to its consideration of the issues presented in the Petition.

member of the 18th Street Gang, and Amezcua started to fight, and Contreras-Armas eventually stabbed Amezcua four times with a knife. (*Id*. at 8–9, 20.) Contreras-Armas then took Amezcua's cell phone and $5 from Hernandez before leaving. (*Id*. at 9.) Amezcua later died as a result of his injuries, and his autopsy revealed stab wounds to the heart and skull. (*Id*. at 20.) At the time of the stabbing, Contreras-Armas was 2.5 months away from turning 18 years old. (*See* ECF No. 17-1.)

### B.    Procedural background

Contreras-Armas was charged with open murder with the use of a deadly weapon and robbery. (ECF No. 36-3.) Following negotiations with the prosecution, Contreras-Armas pleaded guilty to second-degree murder and robbery. (ECF No. 38-4.) Contreras-Armas was sentenced to 36 to 90 months for the robbery conviction to run consecutive to his sentence of life with the possibility of parole after 10 years for the second-degree murder conviction plus a consecutive sentence of 72 to 180 months for the deadly weapon enhancement. (ECF No. 38-15.) Contreras-Armas did not file a direct appeal.

Contreras-Armas filed a post-conviction petition for writ of habeas corpus in state court. (*See* ECF No. 41-18 at 2.) The state court granted Contreras-Armas' direct appeal deprivation claim but denied his remaining claims. (*Id*.) Contreras-Armas filed an appeal of his judgment of conviction pursuant to Nevada Rule of Appellate Procedure 4(c).[4] (ECF No. 40-20.) The Nevada Supreme Court affirmed Contreras-Armas' judgment of conviction. (ECF No. 40-20.) Contreras-Armas filed a second post-conviction petition for writ of habeas corpus in state court, but the state

---

[4]Nevada Rule of Appellate Procedure 4(c) provides that "[a]n untimely notice of appeal from a judgment of conviction and sentence may be filed" when "[a] postconviction petition for a writ of habeas corpus has been timely and properly filed . . . asserting a viable claim that the petitioner was unlawfully deprived of the right to a timely direct appeal" and the state district court finds "that the petitioner has established a valid appeal-deprivation claim and is entitled to a direct appeal."

court dismissed it as procedurally barred. (ECF No. 41-18.) The Nevada Court of Appeals affirmed the denial, explaining that (1) Contreras-Armas' second post-conviction petition was successive and (2) Contreras-Armas did not appeal the denial of his first post-conviction petition. (*Id*.)

Contreras-Armas filed a pro se federal habeas petition, a counseled first-amended petition, and a counseled second-amended petition. (ECF Nos. 6, 12, 27.) Respondents moved to dismiss the second-amended petition, and this Court granted the motion, in part, finding (1) that ground 2 lacked merit and (2) grounds 3, 5, 6, 7, 8, and 9 are technically exhausted, deferring consideration on whether Contreras-Armas can demonstrate cause and prejudice to overcome the procedural default until after the filing of an answer and reply. (ECF Nos. 35, 61.) Respondents answered the second-amended petition, and Contreras-Armas replied. (ECF Nos. 78, 81.)

## II.   GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

### A.   Ground 1—sentencing court relied on inadmissible evidence

In ground 1, Contreras-Armas alleges that the sentencing court's reliance on inadmissible, suspect evidence at his sentencing hearing deprived him of his right to due process under the Fifth and Fourteenth Amendments. (ECF No. 28 at 5.) Specifically, Contreras-Armas alleges that the

sentencing court relied on the following inadmissible evidence: his juvenile adjudications, allegations that he had stolen a car, inappropriate comments by Officer Lopez, statements by Officer Hallert concerning an incident from five years earlier, hearsay about the stealing of an MP3 player, and his performance at a Nevada youth training center. (*Id*. at 5–6.)

### 1.    Background information

During Contreras-Armas' sentencing hearing, Christopher Toles, Contreras-Armas' case manager for the six months he was at the China Spring Youth Camp, testified that Contreras-Armas was 15 years old when he was ordered by a court to the facility. (ECF No. 14-5 at 32–33, 35–36.) Contreras-Armas "made it through the first three phases of the program," but because "he could not meet the honor stage," he did not successfully complete the program. (*Id*. at 39.) A week after Contreras-Armas' release from China Springs, Contreras-Armas' probation officer informed Toles that Contreras-Armas "had taken off," absconding from probation. (*Id*. at 40.)

Matthew Elder testified that Contreras-Armas was committed to the Caliente Youth Center in February 2012. (*Id*. at 45.) Following Contreras-Armas' release from Caliente on October 25, 2012, Elder was his youth parole counselor. (*Id*. at 44–45.) Elder testified that Contreras-Armas "absconded from supervision after a week." (*Id*. at 46–47.) Contreras-Armas "was arrested about three weeks later for obstructing/resisting and possession of alcohol," placed on house arrest, and then released on November 25, 2012. (*Id*. at 47.) Following that release, Contreras-Armas again "absconds less than a week later." (*Id*.) Contreras-Armas was arrested on January 3, 2013, "for burglary, parole violation, runaway, parole violation associating with known gang members." (*Id*.) At this point, Contreras-Armas was committed to the Nevada Youth Training Center for seven months. (*Id*. at 48.) Contreras-Armas then went to Transformations Independent Living where he lived for four weeks before absconding again. (*Id*. at 49–50.) It was during this time that Contreras-

Armas killed Amezcua. (*Id*. at 50.) Contreras-Armas told Elder that "he had significant ties to the gang, and referenced that it would be difficult for him to leave that lifestyle." (*Id*.)

Officer Gerald Hallert testified that on March 14, 2009, he investigated a robbery of an MP3 player from a 15-year-old girl. (*Id*. at 51–52.) Contreras-Armas, who was 13 or 14 years old at the time, was identified as one of the robbers. (*Id*. at 53.) Contreras-Armas admitted to the robbery. (*Id*. at 53–54.)

Officer Juan Lopez testified that on November 13, 2012, he investigated a robbery of a gang member who stated that he was attacked by a member of the 18th street gang and was robbed of his cell phone, gold chain, and red bandana. (*Id*. at 56, 59–61.) The attacking gang member was later identified to be Contreras-Armas. (*Id*. at 62.) Contreras-Armas admitted to the robbery, explaining his motivation was the victim's gang affiliation. (*Id*. at 63–65.) Officer Lopez also testified that he "had multiple contacts with Mr. Contreras . . . [a]nd Mr. Contreras had actually ran from us on a case with a stolen vehicle." (*Id*. at 66.)

Prior to handing down Contreras-Armas' sentence, the state court noted: "this Court has distinguished between civil juvenile offenses and adult criminal histories." (*Id*. at 114.) The state court then made the following comments:

> It is this Court's opinion, having reviewed the file materials, and considering the evidence presented, that the facts of this offense tilt far into the - - far on the continuum of evil.
>
> This was a senseless act. This was an unnecessary act. And it was all over a color or a group of associates or a street location or bravado. But it could have been avoided with one thought. And that was to do something different.
>
> Mr. Contreras-Armas, you brought a knife to the altercation, without provocation. You had no regard for Andrew's life or for those whose lives he touched. The facts of this offense are egregious.
>
> I have reviewed your juvenile civil history and considered the evidence today, and seen instances of violence, theft, gang-related conduct, and a rejection of all therapeutic services in attempts to redirect your conduct.
>
> Your history, also, while not an adult criminal history, speaks to the egregiousness of this offense.

The impact on those affected by the crime is profound and palpable. One day someone might review this record. They will see an anesthetized rendition of the words spoken.

May the reader of this record know the human dynamic that has been present within this room, which again is palpable and sincere.

Of the many things I heard through the victim-impact statements, two phrases caused me to pause. And that is: When addressing Mr. Contreras-Armas, it was said, "You destroyed our lives by taking his, and you killed my entire family." It's difficult to consider a less-impactful crime, particularly given the description of Andrew that was presented today.

You are young, Mr. Contreras-Armas. People say, jokingly, we should find a pill to hibernate some young men and women from about the time they hit 15 until they hit 25, because they make decisions during that decade that are unexplainable, and it may not define the good nature of who they would otherwise be.

Neuroscience reveals that young people make decisions different, as their cognitive abilities improve. And despite your civil juvenile history, despite your recalcitrance to all forms of assistance, you're extremely young. And that militates in your favor. This was not the cold, calculating decision of a fully formed adult, with the life experience of our mainstream community.

I further acknowledge in mitigation that your family narrative is somewhat chaotic; thus, influencing who you are today.

I found your attorney's statement in mitigation to be curious, and attractive in its curiosity because it's just slightly different from what I read. And at one point . . . [he] quoted another judge, of the antidote for crime is really administered in childhood, by the parents. The problem is not fundamentally that of an improper child as much as it is the improper home. And you were born into circumstances that help define who you are.

For all of these reasons, and one more, I must place the robbery within a certain context, a context overshadowed by the underlying crime, but the context of a phone and a five-dollar bill.

For the following reason, on Count II, you will serve a minimum of 36 months and a maximum of 90 months for stealing a phone and a five-dollar bill.

And as to Count II . . . I am persuaded by [the prosecutor] that, given the depravity, the disregard that you've demonstrated for Mr. Andrew's life, you should forever be entangled with our criminal justice system.

You may persuade a Parole Board many years from now that your character has reformed and you're worthy of liberty. But for now, and for a long distance into our future, you have forfeited your right to walk among us free.

I sentence you to a period of time in the Nevada Department of Corrections defined by your natural life. You may only have parole eligibility after 10 years have been served.

(*Id*. at 114–117.)

## 2.      State court determination

In affirming Contreras-Armas' judgment of conviction, the Nevada Supreme Court held:

> Contreras-Armas argues that the district court improperly relied on a juvenile adjudication, evidence about how he was supervised, and an officer's hearsay comments sentencing him to life in prison. We discern no plain error. *See Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) (reviewing unobjected-to error for plain error affecting substantial rights). A district court may consider evidence that may not otherwise be admissible at trial in determining an appropriate sentence. *Norwood v. State*, 112 Nev. 438, 440, 915 P.2d 277, 278 (1996). This includes a defendant's juvenile record, *see Thomas v. State*, 88 Nev. 382, 385, 498 P.2d 1314, 1316 (1972); *see also* NRS 62H.030(3)(b); NRS 62H.170(3), and even hearsay, *see* NRS 47.020(3)(c). Moreover, Contreras-Armas has not demonstrated that the evidence was impalpable or highly suspect. *See Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 489-90 (2009).

(ECF No. 40-20 at 3.)

## 3.      Analysis

It is "necessary that a sentencing judge not be denied an opportunity to obtain pertinent information," rather, it is highly relevant that a sentencing judge possess "the fullest information possible concerning the defendant's life and characteristics" in order to fashion an appropriate sentence. *Williams v. New York*, 337 U.S. 241, 247 (1949) (determining that it could not "say that the due-process clause renders a sentence void merely because a judge gets additional out-of-court information to assist him in the exercise of this awesome power of imposing the death sentence"). Indeed, "[i]n discharging his duty of imposing a proper sentence, the sentencing judge is authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime." *Williams v. Oklahoma*, 358 U.S. 576, 585 (1959) ("[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the

8

Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics."); *Nichols v. United States*, 511 U.S. 738, 747 (1994) ("As a general proposition, a sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.'"); *Williams v. Illinois*, 399 U.S. 235, 243 (1970) ("Sentencing judges are vested with wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear."); *Wasman v. United States*, 468 U.S. 559, 563 (1984) ("The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed."). However, importantly, "the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, . . . render[s] the proceedings lacking in due process." *Townsend v. Burke*, 334 U.S. 736, 741 (1948).

As the Nevada Supreme Court reasonably determined, the evidence admitted at Contreras-Armas' sentencing hearing was not impalpable or highly suspect rendering his sentencing hearing lacking in due process. The juvenile adjudications were obtained from juvenile court records, and the remaining evidence to which Contreras-Armas takes issue related to sworn testimony from witnesses who were cross-examined by defense counsel. Based on this record, Contreras-Armas fails to demonstrate that the state court relied on inaccurate information, unfounded assumptions, or groundless inferences in sentencing him. *Cf. United States v. Weston*, 448 F.2d 626, 634 (9th Cir. 1971) (holding that "a sentence cannot be predicated on information of so little value" because "[a] rational penal system must have some concern for the probable accuracy of the informational inputs in the sentencing process"); *United States v. Safirstein*, 827 F.2d 1380, 1385 (9th Cir. 1987)

1  (explaining that "unfounded assumptions or groundless inferences although based upon proper and

2  accurate information may not, consistent with due process, form the basis of sentence"); *United*

3  *States v. Borrero-Isaza*, 887 F.2d 1349, 1352 (9th Cir. 1989) ("[T]he district judge may not

4  consider improper, inaccurate, or mistaken information, nor may he make unfounded assumptions

5  or groundless inferences in imposing sentence."). Consequently, the Nevada Supreme Court's

6  denial of this ground constituted an objectively reasonable application of federal law and was not

7  based on an unreasonable determination of the facts. Contreras-Armas is not entitled to federal

8  habeas relief for ground 1.

9  **B.    Ground 3—counsel failed to object to admission of evidence**

10  In ground 3, Contreras-Armas alleges that his counsel failed to object to the admission of

11  inadmissible, suspect evidence at the sentencing hearing in violation of his Fifth, Sixth, and

12  Fourteenth Amendment rights. (ECF No. 28 at 9.) Like with ground 1, Contreras-Armas takes

13  issue with the state court's reliance on his juvenile adjudications, allegations that he had stolen a

14  car, inappropriate comments by Officer Lopez, statements by Officer Hallert concerning an

15  incident from five years earlier, hearsay about the stealing of an MP3 player, and his performance

16  at a Nevada youth training center. (*Id.* at 9.)

17  **1.    Standard for ineffective assistance of counsel**

18  In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis

19  of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the

20  attorney's "representation fell below an objective standard of reasonableness," and (2) that the

21  attorney's deficient performance prejudiced the defendant such that "there is a reasonable

22  probability that, but for counsel's unprofessional errors, the result of the proceeding would have

23  been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective

assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004). As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id.* at 979–80. And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.").

### 2.    Procedural default

This Court previously determined that ground 3 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that he could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to excuse the default. (*Id*. at 8–9.) This Court deferred consideration of Contreras-Armas' cause and prejudice argument under *Martinez* until the time of merits consideration. (*Id*. at 9.) The principal issues before this

Court, in context,[5] are: (1) whether ground 3 is substantial; (2) if so, whether Contreras-Armas' state post-conviction counsel was ineffective in raising this claim in the state district court; and (3) if so, whether, on the merits of ground 3, Contreras-Armas was denied effective assistance of counsel. *See, e.g., Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017); *Detrich v. Ryan*, 740 F.3d 1237, 1243–46 (9th Cir. 2013).

### 3.   Analysis

Nevada law authorizes a state court to "consider a wide, largely unlimited variety of information to ensure that the punishment fits not only the crime, but also the individual defendant." *Martinez v. State*, 961 P.2d 143, 145 (Nev. 1998); NRS § 176.015(6). This includes a defendant's juvenile record. *See Thomas v. State*, 498 P.2d 1314, 1316 (1972). This also includes hearsay. *See* NRS § 47.020(3)(c).

Based on the breadth of information the state court was permitted to consider under Nevada law in sentencing Contreras-Armas, Contreras-Armas fails to demonstrate that his counsel's "representation fell below an objective standard of reasonableness" when he did not object to the evidence admitted at the sentencing hearing. *Strickland*, 466 U.S. at 688; *see also Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) ("[T]rial counsel cannot have been ineffective for failing to raise a meritless objection."). In fact, instead of objecting to the admission of the evidence, which was sure to be unfruitful, Contreras-Armas' counsel argued that the state court should disregard it. (ECF No. 38-13 at 92 (arguing that the juvenile record was "a bunch of hooey").) This was reasonable. Based on this record, Contreras-Armas' ineffective-assistance-of-trial-counsel claim

---

[5]It has not been disputed herein (1) that a state post-conviction proceeding in the state district court was an initial-review collateral proceeding for purposes of *Martinez*, or (2) that Nevada procedural law sufficiently requires an inmate to present a claim of ineffective assistance of trial counsel for the first time in that proceeding for purposes of applying the *Martinez* rule. *See generally Rodney v. Filson*, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

1   is not substantial. Because Contreras-Armas fails to demonstrate requisite prejudice necessary to

2   overcome the procedural default of ground 3, ground 3 is dismissed.

3                    **C.      Ground 4—juvenile civil allegations**

4            In ground 4, Contreras-Armas alleges that the use of juvenile civil allegations against him

5   violated equal protection. (ECF No. 28 at 12.) Contreras-Armas' presentence investigation report

6   included the results of a psychological and IQ evaluation from 2011 when Contreras-Armas was

7   a minor, the result of a substance abuse evaluation from 2011 when Contreras-Armas was a minor,

8   and his juvenile record. (*See* ECF No. 17-1.) Contreras-Armas argues that no adult being sentenced

9   for a crime would have juvenile evaluations or juvenile criminal history considered by a sentencing

10  court. (ECF No. 81 at 25.)

11                    **1.      Standard for an Equal Protection violation**

12           "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

13  deny to any person within its jurisdiction the equal protection of the laws, which is essentially a

14  direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne*

15  *Living Center*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). "The general rule is

16  that legislation is presumed to be valid and will be sustained if the classification drawn by the

17  statute is rationally related to a legitimate state interest." *Id*. at 440. "The general rule gives way,

18  however, when a statute classifies by race, alienage, or national origin" or "when state laws

19  impinge on personal rights protected by the Constitution." *Id*. "[T]hese laws are subjected to strict

20  scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."

21  *Id*.

22                    **2.      State court determination**

23           In affirming Contreras-Armas' judgment of conviction, the Nevada Supreme Court held:

Contreras-Armas contends that the district court's consideration of juvenile civil allegations against him during sentencing violated equal protection. He argues that, as "[n]o other adult being convicted of a crime would be forced to face his juvenile drug/alcohol evaluation," it is a violation of equal protection for him to have to defend his record. We conclude that this claim lacks merit. "The Equal Protection Clause of the Fourteenth Amendment mandates that all persons similarly situated receive like treatment under the law." *Gaines v. State*, 116 Nev. 359, 371, 998 P.2d 166, 173 (2000). When a statute implicates a suspect classification or a fundamental right, it is subject to strict scrutiny. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). Contreras-Armas has not demonstrated that the classification at issue, offenders with sealed juvenile court records, is suspect under the Equal Protection Clause. *Cf. Thomas*, 88 Nev. at 385, 498 P.2d at 1316 (recognizing that court may consider juvenile record in sentencing defendant); *see also* NRS 62E.620(9) (permitting release of information related to juvenile substance abuse counseling to juvenile court and district attorney); NRS 62H.030(3)(b) (permitting Division of Parole and Probation to inspect unsealed juvenile records to prepare PSI report). And the right at issue, privacy regarding court ordered juvenile counseling, is not a fundamental right for purposes of the Equal Protection Clause. *See J.P. v. DeSanti*, 653 F.2d 1080, 1090-91 (6th Cir. 1981) (concluding that the Constitution does not encompass a general right to nondisclosure of confidential information contained in juvenile court records). Because neither a suspect classification nor a fundamental right is at issue, rational basis review applies. *Cleburne*, 473 U.S. at 440. Contreras-Armas fails to demonstrate that the Legislature lacked a rational basis for adopting NRS 62H.030(3)(b) and NRS 62E.620(9).

(ECF No. 40-20 at 3–4.)

### 3.   Analysis

It appears that Contreras-Armas' 2011 psychological and IQ evaluation, 2011 substance abuse evaluation, and prior juvenile adjudications were likely sealed at the time of Contreras-Armas' sentencing hearing. *See* NRS § 62H.140 (providing that, with a few exceptions, "all records relating to the child must be sealed automatically within 60 days after the date the child reaches 18 years of age"); *see also* NRS § 62E.620(9) (2009) (providing that "information relating to the evaluation or treatment of a child . . . is confidential"). Contreras-Armas appears to contend that because NRS § 62H.170 only allows sealed records to be inspected by a court "if the records relate to a person who is less than 21 years of age and who is to be sentenced by the court in a

criminal proceeding," he was "subjected to having his juvenile record considered at sentencing because of his age, which is discriminatory." (ECF No. 81 at 25.) Based on his argument, the Nevada Supreme Court reasonably concluded that the classification at issue is offenders with sealed juvenile court records who are under the age of 21 and thus subject to their sealed records being investigated (unlike offenders with sealed juvenile court records who are over the age of 21 and thus *not* subject to their sealed records being investigated).

As the Nevada Supreme Court reasonably concluded, this classification is not a suspect classification under the Equal Protection Clause. *See City of Cleburne*, 473 U.S. at 441 ("We have declined . . . to extend heightened review to differential treatment based on age."). And as the Nevada Supreme Court also reasonably concluded, Contreras-Armas fails to demonstrate that the right at issue—privacy regarding juvenile evaluations and adjudications—is a fundamental right for purposes of the Equal Protection Clause. Accordingly, Contreras-Armas must demonstrate that the Nevada Legislature lacked a rational basis for allowing sealed juvenile court records to be available for defendants under 21 of age but not allowing those same sealed juvenile court records to be available for defendants over 21 years of age. As the Nevada Supreme Court reasonably concluded, Contreras-Armas fails to make this demonstration. Rather, it appears that this allowance for sealed juvenile records to be reviewed in cases where the defendant is under 21 is rationally related to a legitimate state interest of ensuring that state courts have sufficient information to properly sentence young offenders. *See, e.g., Martinez v. State*, 961 P.2d 143, 145 (1998) (explaining that the state court may "consider a wide, largely unlimited variety of information to ensure that the punishment fits not only the crime, but also the individual defendant").

Therefore, because the Nevada Supreme Court's determination that the state court did not violate equal protection by considering Contreras-Armas' sealed juvenile records constitutes an objectively reasonable application of clearly established federal law and was not based on an unreasonable determination of the facts, Contreras-Armas is not entitled to federal habeas relief for grounds 4.

### D.    Ground 5—counsel misadvised him about pleading guilty

In ground 5, Contreras-Armas alleges that his counsel ineffectively misadvised him about the consequences of pleading guilty in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 28 at 13.) Specifically, Contreras-Armas asserts that his counsel grossly misrepresented the possible sentence he faced, inaccurately telling Contreras-Armas (1) that the maximum sentence he faced was 12 years and (2) that the robbery conviction would run concurrent to the second-degree murder conviction. (*Id.*)

### 1.    Background information

Contreras-Armas signed a guilty plea memorandum, which provided, *inter alia*, that he understood that (1) he may be sentenced to life with the possibility of parole after 10 years or a definite term of 10 to 25 years for the second-degree murder conviction, and (2) "[t]he sentence as to [the second-degree murder conviction] may run concurrent or consecutive to [the robbery conviction]." (ECF No. 38-4 at 4–5.) Similarly, during Contreras-Armas' plea canvass at the change of plea hearing, Contreras-Armas stated under oath that (1) he understood that the robbery and second-degree murder convictions could be ordered to run consecutively or concurrently, (2) he understood that the possible sentence for second-degree murder was either life with parole eligibility after 10 years or a definite term of 10 to 25 years, and (3) his counsel had read the plea agreement to him "word for word" a few weeks prior and then revisited "the high points" of the

agreement on the date of the change of plea hearing. (ECF No. 38-5 at 12–13, 16.) Because Contreras-Armas had not read the plea agreement personally, the state court took a break during the middle of the hearing to allow Contreras-Armas and his counsel to "go through [the guilty plea memorandum] again one more time." (*Id*. at 17.) Following a 30-minute break, Contreras-Armas stated that he went through the guilty plea memorandum again with his counsel. (*Id*.) The state court found that Contreras-Armas' "pleas [were] fairly and voluntarily made." (*Id*. at 21.)

At the post-conviction evidentiary hearing, Contreras-Armas' counsel testified, *inter alia*, that (1) he "explain[ed] the risk at sentencing to" Contreras-Armas, (2) he "absolutely" went through the guilty plea memorandum with Contreras-Armas before he pleaded guilty, (3) he "absolutely" read the guilty plea memorandum with Contreras-Armas "word-for-word," (4) he "went over with [Contreras-Armas] all the different sentencing possibilities that were present in the case," (5) "[t]he potential existed" for Contreras-Armas to be sentenced to consecutive time, and (6) he informed Contreras-Armas that the state court judge "would be pretty conservative and sentencing could be pretty severe." (ECF No. 14-31 at 6, 12, 27–28.) Contreras-Armas testified at the post-conviction evidentiary hearing that he "had a paper where [his counsel] had wrote on the back of . . . the page something [regarding sentencing that was] way different than what [he] was supposed to get." (*Id*. at 47.) However, Contreras-Armas also testified that (1) he knew that he "was able to get a life sentence" on the second-degree murder conviction, and (2) he "knew that the murder conviction and the weapon enhancement and the robbery conviction could all run consecutive to each other." (*Id*. at 44–45.)

## 2. Procedural default

This Court previously determined that ground 5 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that his

postconviction counsel abandoned him, demonstrating cause to excuse the default. (*Id*.) This Court deferred consideration of cause and prejudice until the time of merits consideration. (*Id*.)

To overcome procedural default, the petitioner must demonstrate cause and actual prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Then, to establish prejudice, the petitioner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn v. Ramirez*, 142 S.Ct. 1718, 133 (2022) (quoting *Murray*, 477 U.S. at 494) (emphasis in original). Contreras-Armas argues that he can show cause to overcome the procedural default of ground 5 under *Maples v. Thomas* or, alternatively, because of his appellate counsel's ineffectiveness. (ECF No. 81 at 7–13.)

### 3.   Analysis

Trial counsel is "required to give the defendant the tools he needs to make an intelligent decision" regarding pleading guilty. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002); *see also Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (explaining that "counsel have a duty to supply criminal defendants with necessary and accurate information" regarding their guilty plea). And "[t]hough a mere inaccurate prediction, standing alone, would not constitute ineffective assistance, the gross mischaracterization of the likely outcome [of a guilty plea], combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys." *Iaea*, 800 F.2d at 865 (internal citation omitted).

Contreras-Armas fails to demonstrate that his counsel failed to give him the tools he needed to make an intelligent decision about pleading guilty or that his counsel grossly mischaracterized

the outcome of his guilty plea. Rather, the record belies Contreras-Armas' contention that his counsel misadvised him about his potential sentence. First, Contreras-Armas' plea agreement provided that he faced more than a maximum sentence of 12 years—instead providing that he faced a sentence of 10 years to life or 10 to 25 years for the second-degree murder conviction— and faced the possibility of being sentenced consecutively for the robbery conviction. Second, Contreras-Armas answered affirmatively when asked if he understood these possible sentences at his change of plea hearing. Third, Contreras-Armas' counsel testified that he "went over with [Contreras-Armas] all the different sentencing possibilities that were present in the case" and "[t]he potential existed" for Contreras-Armas to be sentenced to consecutive time. As such, Contreras-Armas' claim that his counsel misadvised him about his potential sentence rests entirely on his self-serving statements.[6] *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an ineffective-assistance-of-trial-counsel claim, in part, because "[o]ther than [the petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to discuss potential defenses with him"); *Turner*, 281 F.3d at 881 (explaining that the petitioner's "self-serving statement, made years later, that [his trial counsel] told him that 'this was not a death penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a death verdict"). Consequently, Contreras-Armas fails to demonstrate that his counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

---

[6]Notably, Contreras-Armas' own testimony at the post-conviction evidentiary hearing that he knew that he "was able to get a life sentence" on the second-degree murder conviction and "knew that the murder conviction and the weapon enhancement and the robbery conviction could all run consecutive to each other" contradicts his own argument.

Because Contreras-Armas' ineffective-assistance-of-trial-counsel claim is not substantial, Contreras-Armas fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 5. Ground 5 is dismissed as procedurally defaulted.

**E.    Ground 6—counsel failed to advise about intoxication defense**

In ground 6, Contreras-Armas alleges that his counsel failed to advise him about a voluntary intoxication defense in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 28 at 14.)

**1.    Background information**

In her post-plea psychiatric evaluation of Contreras-Armas, Dr. Melissa Piasecki reported the following as Contreras-Armas' version of events regarding the killing: "Mr. Armas reported he had been up all night the night before the stabbing using cocaine. He was 'hella high' from the cocaine and from smoking marijuana that day." (ECF No. 17-2 at 3.) In her findings, Dr. Piasecki reported: "Mr. Armas has a history of psychotic symptoms (hallucinations, paranoia) that may be linked to his chronic cocaine use. The stabbing may have been triggered by cocaine-induced paranoid thoughts which led him to perceive and act on a threat." (*Id*. at 4.)

**2.    Procedural default**

This Court previously determined that ground 6 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that he could demonstrate cause and prejudice under *Martinez* to excuse the default. (*Id*. at 8–9.) This Court deferred consideration of Contreras-Armas' cause and prejudice argument under *Martinez* until the time of merits consideration. (*Id*. at 9.) As with ground 3, the principal issues before this Court are: (1) whether ground 6 is substantial; (2) if so, whether Contreras-Armas' state post-conviction counsel was ineffective in raising this claim in the state district court; and (3) if so, whether, on

the merits of ground 6, Contreras-Armas was denied effective assistance of counsel. *See, e.g., Atwood*, 870 F.3d at 1059–60; *Detrich*, 740 F.3d at 1243–46.

### 3.    Analysis

Nevada law allows "voluntary intoxication . . . [to] be considered in determining intent." *Andrade v. State*, 483 P.2d 208, 208 (Nev. 1971); *see also* NRS § 193.220 ("No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his or her condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of the person's intoxication may be taken into consideration in determining the purpose, motive or intent."). Because Contreras-Armas was charged with open murder (ECF No. 36-3), his trial counsel could have investigated Contreras-Armas' alleged[7] impaired condition at the time of the stabbing to argue that, under Nevada law, he lacked the specific intent to kill to be convicted of first-degree murder. *Strickland*, 466 U.S. at 688; *see also Nevius v. State*, 699 P.2d 1053, 1060 (Nev. 1985) ("[V]oluntary intoxication may negate specific intent."); *see also Hancock v. State*, 397 P.2d 181, 182 (Nev. 1964) (explaining that first-degree murder requires the specific intent to kill). However, because Contreras-Armas pleaded guilty to second-degree murder and robbery and because both second-degree murder and robbery are general intent crimes, Contreras-Armas fails to demonstrate that he would have pled not guilty and insisted on going to trial had counsel advised him regarding an intoxication defense. *Strickland*, 466 U.S. at 694; *see also Hancock*, 397 P.2d at 182 (explaining that "a specific intent to kill need not be found" for second degree murder); *Litteral v. State*, 634

---

[7]Contreras-Armas fails to present any evidence of his impaired state beyond Dr. Piasecki's report, which was based on his own account of events.

1  P.2d 1226, 1228–29 (Nev. 1981) (holding that robbery is a general intent crime), *disapproved of*

2  *on other grounds by Talancon v. State*, 721 P.2d 764, 769 (Nev. 1986); *Hill*, 474 U.S. at 59.

3      Because Contreras-Armas' ineffective-assistance-of-trial-counsel claim is not substantial,

4  Contreras-Armas fails to demonstrate requisite prejudice necessary to overcome the procedural

5  default of ground 6. Ground 6 is dismissed as procedurally defaulted.

6              **F.    Ground 7—counsel failed to present mitigating evidence**

7      In ground 7, Contreras-Armas alleges that his counsel failed to present mitigation evidence

8  at sentencing in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 28 at 16.)

9  Specifically, Contreras-Armas argues that his counsel did not emphasize Dr. Piasecki's report to

10 show his struggle with mental illness or call witnesses, like his parents, to testify on his behalf. (*Id*.

11 at 16–17; ECF No. 81 at 32.)

12                  **1.    Background information**

13     Following Contreras-Armas' change of plea, Contreras-Armas' counsel "filed an ex parte

14 motion for psychiatrist/psychologist evaluation fees." (ECF No. 38-6.) Thereafter, following the

15 granting of that order, Contreras-Armas' counsel filed Dr. Piasecki's psychiatric evaluation of

16 Contreras-Armas with the state court. (ECF No. 38-7.) Dr. Piasecki's evaluation contained

17 Contreras-Armas' medical and psychiatric history, development and educational history,

18 substance abuse history, legal history, and mental status examination. (ECF No. 17-2 at 2–4.) Dr.

19 Piasecki's findings included, *inter alia*, the following: (1) "Mr. Armas' history and presentation is

20 highly suggestive of an intellectual disability," (2) "Mr. Armas has a history of early onset and

21 pervasive substance use and the use of neurotoxic substance use," and (3) "Mr. Armas was

22 seventeen years old" at the time of the killing, and "[a]t this age, the brain is still developing and

23 the executive functions of the brain are not mature." (*Id*. at 4–5.)

Shortly thereafter and prior to sentencing, Contreras-Armas' counsel filed a "defense sentencing memorandum." (ECF No. 38-10.) In the sentencing memorandum, Contreras-Armas' counsel stated that Contreras-Armas was "[n]ever a smart student," citing Dr. Piasecki's psychological evaluation. (*Id*. at 6.) Contreras-Armas' counsel also stated, "during the 210 days [Contreras-Armas] has been in custody, not one family member has reached out to [counsel] in regard to this young man. Although [counsel] received a few calls [from] his girlfriend, his parents are nowhere to be found." (*Id*. at 7.) Contreras-Armas' counsel then quoted Justice John W. Hill: "The antidote for crime should be administered in childhood, by the parents. The problem is not fundamentally that of the improper child so much as it is the improper home." (*Id*.)

During the sentencing hearing, Contreras-Armas' counsel did not call any witnesses, but he admitted a copy of Contreras-Armas' high school diploma that he earned while in custody. (ECF No. 38-13 at 71, 85.) Contreras-Armas' counsel then made the following arguments: (1) sentencing Contreras-Armas too harshly would not show proper consideration of the public policy of rewarding offenders for taking responsibility for their actions, (2) Contreras-Armas is young and should not be given up on, and (3) Contreras-Armas' "borderline retardation," which was verified by Dr. Piasecki, should mitigate against a harsh sentence. (*Id*. at 89–94.)

## 2.     Procedural default

This Court previously determined that ground 7 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that he could demonstrate cause and prejudice under *Martinez* to excuse the default. (*Id*. at 8–9.) This Court deferred consideration of Contreras-Armas' cause and prejudice argument under *Martinez* until the time of merits consideration. (*Id*. at 9.) As with grounds 3 and 6, the principal issues before this Court are: (1) whether ground 7 is substantial; (2) if so, whether Contreras-Armas' state post-

23

conviction counsel was ineffective in raising this claim in the state district court; and (3) if so, whether, on the merits of ground 7, Contreras-Armas was denied effective assistance of counsel. *See, e.g., Atwood*, 870 F.3d at 1059–60; *Detrich*, 740 F.3d at 1243–46.

### 3.     Analysis

Counsel's performance at the penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688. When challenging counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003) (emphasis in original). "To perform effectively . . . counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the available mitigating evidence." *Lambright v. Schriro*, 490 F.3d 1103, 1116 (9th Cir. 2007) (internal quotation marks and brackets omitted).

Addressing first Contreras-Armas' assertion that his counsel should have called witnesses like his parents to testify at his sentencing hearing, Contreras-Armas fails to demonstrate deficiency. Contreras-Armas' counsel stated in his sentencing memorandum that Contreras-Armas' parents were "nowhere to be found." (ECF No. 38-10 at 7.) Then at the sentencing hearing, Contreras-Armas' counsel focused on explaining the basis of Contreras-Armas' gang membership, which lead to the fight with Amezcua, a member of a rival gang. (*See* ECF No. 38-13 at 91 (arguing that the gang lifestyle is "a societal dynamic that will never go away. People are disenfranchised, people are abused, taxes are too high, people make limited income, and they survive as best they can")). This apparent strategy of portraying Contreras-Armas as a young man with no family support who was forced to join a gang—instead of presenting character-type witnesses from family

members—was reasonable.[8] *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Moreover, Contreras-Armas fails to articulate what types of testimony witnesses would have provided. *See United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective assistance of counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing").

Turning to Contreras-Armas' contention that his trial counsel should have done more to highlight his mental illness, Contreras-Armas again fails to demonstrate deficiency. Contreras-Armas' counsel obtained the psychiatric evaluation conducted by Dr. Piasecki, which contained details about Contreras-Armas' mental illness, and filed that report with the state court. And while counsel may not have overemphasized Dr. Piasecki's evaluation during his sentencing argument, he did reference it in his argument and cite to it in his sentencing memorandum, which the state court stated it had read. *See Richter*, 562 U.S. at 106 ("Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."); *see also Strickland*, 466 U.S. at 688–89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.")

---

[8]In fact, the state district court stated, in speaking directly at Contreras-Armas, that it "acknowledge[d] in mitigation that your family narrative is somewhat chaotic; thus, influencing who you are today." (ECF No. 14-5 at 116.)

Because Contreras-Armas' ineffective-assistance-of-trial-counsel claim is not substantial, Contreras-Armas fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 7. Ground 7 is dismissed as procedurally defaulted.

### G.    Ground 8—counsel failed to investigate

In ground 8, Contreras-Armas alleges that his counsel failed to investigate his intellectual disability and mental status, which led to him taking a plea that was not knowing and voluntary in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 28 at 17.)

#### 1.    Procedural default

This Court previously determined that ground 8 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that his postconviction counsel abandoned him, demonstrating cause to excuse the default. (*Id.*) This Court deferred consideration of cause and prejudice until the time of merits consideration. (*Id.*)

To overcome procedural default, the petitioner must demonstrate cause and actual prejudice. *Coleman*, 501 U.S. at 750 (1991). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "Then, to establish prejudice, the petitioner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn*, 142 S.Ct. at 1733 (quoting *Murray*, 477 U.S. at 494) (emphasis in original). Contreras-Armas argues that he can show cause under *Maples* or, alternatively, because of his appellate counsel's ineffectiveness. (ECF No. 81 at 7–13.)

#### 2.    Analysis

"There is no clear Supreme Court case law always requiring a mental health investigation" prior to a criminal trial. *Gonzalez v. Wong*, 667 F.3d 965, 991 (9th Cir. 2011). To the contrary, *Strickland* recognizes that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691.

It is true, as noted in grounds 6 and 7, that Dr. Piasecki reported that Contreras-Armas' history showed psychotic symptoms, including hallucinations and paranoia, and was "highly suggestive of an intellectual disability." However, turning first to Contreras-Armas' potential intellectual disability, Contreras-Armas fails to demonstrate that further investigation prior to his plea was warranted. Indeed, Contreras-Armas' counsel testified at the post-conviction evidentiary hearing that he "was aware that [Contreras-Armas], for lack of a better term, didn't have the highest of mental acuity," but, importantly, he also testified that he "was very confident . . . that [Contreras-Armas] understood fully what [counsel] was doing and the nature of the charges, et cetera." (ECF No. 14-31 at 52.) Because Contreras-Armas' counsel was not concerned that Contreras-Armas' mental abilities affected his capacity to understand what was going on, Contreras-Armas' counsel appears to have made a reasonable decision that investigating Contreras-Armas' cognitive abilities prior to his change of plea hearing was unnecessary. *See Deere v. Cullen*, 718 F.3d 1124, 1147 (9th Cir. 2013) (explaining that "what matters is not whether [the defendant] had a mental illness that affected his decision, but whether he had a mental illness that affected his capacity to understand his situation and make rational choices"); *see also Strickland*, 466 U.S. at 691 ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Next, turning to Contreras-Armas' potential mental illness, Contreras-Armas fails to demonstrate that his counsel was on notice—prior to Dr. Piasecki's report—that he suffered from hallucinations and paranoia. In fact, a psychological evaluation conducted on Contreras-Armas by Dr. Richard Weiher prior to the killing in 2011 does not appear to mention any potential mental illness. (*See* ECF No. 17-1 at 4 (giving the following diagnostic impressions: substance abuse disorder and borderline cognitive ability)). Thus, Contreras-Armas fails to demonstrate that his counsel's failure to investigate his potential mental illness fell below an objective standard of reasonableness. *See Gonzalez v. Knowles*, 515 F.3d 1006, 1015 (9th Cir. 2008) ("Absent any objective indication that [a defendant] suffered from any mental illness, [trial counsel] cannot be deemed ineffective for failing to pursue this avenue . . . where [the defendant's] mental illness seemed unlikely.") *see also Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence.").

Because Contreras-Armas' ineffective-assistance-of-trial-counsel claim is not substantial, Contreras-Armas fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 8. Ground 8 is dismissed as procedurally defaulted.

### H.    Ground 9—guilty plea was invalid

In ground 9, Contreras-Armas alleges that his guilty plea was not knowing and voluntary in violation of his Fifth, Sixth, and Fourteenth Amendment rights. (ECF No. 28 at 19.) Specifically, Contreras-Armas argues that he did not understand the nature of the plea and its consequences because "he was an intellectually disabled, mentally ill teenager." (ECF No. 81 at 37.)

#### 1.    Standard for validity of a plea

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent, and voluntary. *See Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated: a "plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats . . . , misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Id.* at 755; *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the longstanding "test for determining the validity of guilty pleas" is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant"). Although a plea may not be produced "by mental coercion overbearing the will of the defendant," a guilty plea made following "the post-indictment accumulation of evidence [that] convince[s] the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family" is not "improperly compelled." *Brady*, 397 U.S. at 750 (reasoning that "mental coercion" is only found if the defendant "did not or could not, with the help of counsel, rationally weigh the advantages of going to trial against the advantages of pleading guilty").

### 2.    Procedural default

This Court previously determined that ground 9 was technically exhausted and procedurally defaulted. (ECF No. 61 at 8.) Contreras-Armas previously argued that his postconviction counsel abandoned him, demonstrating cause to excuse the default. (*Id.*) This Court deferred consideration of cause and prejudice until the time of merits consideration. (*Id.*)

To overcome procedural default, the petitioner must demonstrate cause to excuse the procedural default and actual prejudice. *Coleman*, 501 U.S. at 750 (1991). To establish cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "Then, to establish prejudice, the petitioner must show not merely a substantial federal claim, such that 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn*, 142 S.Ct. at 1733 (quoting *Murray*, 477 U.S. at 494) (emphasis in original). Contreras-Armas argues that he can show cause to overcome the procedural default of ground 5 under *Maples* or, alternatively, because of his appellate counsel's ineffectiveness. (ECF No. 81 at 7–13.)

### 3.    Analysis

At the beginning of Contreras-Armas' change of plea hearing, the state court stated: "We're going to take some time this morning, Mr. Contreras-Armas, because what we're doing is very important, both to the State, and to you, and I want to make sure that you fully understand each of the steps that we take this morning." (ECF No. 38-5 at 5.) The state court then informed Contreras-Armas: "Your plea this morning will be voluntary; it will be owned by you. You are the only decision maker." (*Id*. at 8.) Thereafter, during his change of plea canvass, Contreras-Armas stated, *inter alia*, that (1) he understood the elements of the charges against him, (2) he understood the possible sentences he faced, and (3) nobody had promised him anything or threatened him in any way to plead guilty. (*Id*. at 10–14.) The state court then found that "Contreras-Armas [was] competent to enter his plea," there was "a factual basis to accept his plea," Contreras-Armas understood "his constitutional rights, which he[ had] freely and knowingly waived," Contreras-

1 Armas understood "the nature of the charges and their consequences," and Contreras-Armas' pleas

2 were "freely and voluntarily made." (*Id*. at 20–21.)

3      Based on this record and "considering all of the relevant circumstances surrounding"

4 Contreras-Armas' plea, including the very thorough canvass performed by the state court,

5 Contreras-Armas fails to demonstrate that his guilty plea was not entered into knowingly,

6 intelligently, and voluntarily. *Brady*, 397 U.S. at 748-49. Rather, Contreras-Armas'

7 representations and the state court's findings at the change of plea hearing, which demonstrate that

8 Contreras-Armas' plea was knowing, intelligent, and voluntary, "carry a strong presumption of

9 verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*

10 *v. Allison*, 431 U.S. 63, 74 (1977); *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012)

11 ("Petitioner's statements at the plea colloquy carry a strong presumption of truth."). Further,

12 Contreras-Armas fails to articulate how his "numerous mental illnesses" and inability to read

13 well—especially in light of the fact that his counsel read the entire guilty plea agreement to him—

14 demonstrate that his plea was not knowing, intelligent, and voluntary. *See Jones v. Gomez*, 66 F.3d

15 199, 205 (9th Cir. 1995) (denying habeas relief because the petitioner's "conclusory allegations

16 did not meet the specificity requirement"); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)

17 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant

18 habeas relief."). Finally, Contreras-Armas' contention that "he felt pressured to plead guilty by his

19 attorney" (ECF No. 81 at 37) is only supported by his self-serving, post-plea petition.

20      Because Contreras-Armas' claim is not substantial, Contreras-Armas fails to demonstrate

21 requisite prejudice necessary to overcome the procedural default of ground 9. Ground 9 is

22 dismissed as procedurally defaulted.

23

## I.      Ground 10—appellate counsel failed to appeal

In ground 10, Contreras-Armas alleges that his appellate counsel failed to appeal the denial of his post-conviction petition in violation of his Sixth and Fourteenth Amendment rights. (ECF No. 28 at 19.)

### 1.      State court determination

In affirming the dismissal of Contreras-Armas' second state post-conviction petition, the Nevada Court of Appeals held:

> To the extent Contreras-Armas claimed previous postconviction counsel's ineffective assistance in failing to file an appeal constituted good cause, his argument lacked merit. Because Contreras-Armas, as a noncapital habeas petitioner, was not entitled to the appointment of postconviction counsel, the ineffective assistance of counsel could not constitute good cause. *See Brown v. McDaniel*, 130 Nev. 565, 569, 331 P.3d 867, 870 (2014). For the foregoing reasons, we conclude the district court did not err by dismissing Contreras-Armas' petition without first conducting an evidentiary hearing.

(ECF No. 41-18 at 3–4.)

### 2.      De novo review is appropriate

Contreras-Armas argues that ground 10 should be reviewed de novo because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts because it misconstrued his argument. (ECF No. 81 at 16.)

As a reminder, Contreras-Armas filed a post-conviction petition for writ of habeas corpus in state court following the entry of his judgment of conviction. (*See* ECF No. 41-18 at 2.) The state court granted Contreras-Armas' direct-appeal-deprivation claim—thereby allowing Contreras-Armas to file a belated appeal of his judgment of conviction pursuant to Nevada Rule of Appellate Procedure 4(c)—but denied his remaining post-conviction claims. (*Id*.). Contreras-Armas' post-conviction counsel, who then became his direct appeal counsel, appeared to file an

appeal of the judgment of conviction *and* the denial of his post-conviction petition. (*See* ECF Nos. 40-1 at 5, 40-3 at 6, 40-8 at 12.) In its affirmance order, the Nevada Supreme Court stated that it was only considering the appeal to be from the judgment of conviction. (ECF No. 40-20 at 2.) In a footnote, the Nevada Supreme Court stated, "[a]lthough the notice of appeal . . . references the order entered on March 29, 2017, which resolved appellant's post-conviction habeas petition, we conclude that other language in the notice of appeal that refers to a belated appeal and NRAP 4(c) is sufficient for us to infer the intent to appeal from the judgment of conviction." (*Id*. at 2 n.1.) The Nevada Supreme Court then stated, "[b]ecause the district court has authority to prepare a notice of appeal on an aggrieved litigant's behalf in limited circumstances that do not include the denial of a postconviction habeas petition, . . . we lack jurisdiction to consider appellant's claims of error related to the denial of his postconviction petition." (*Id*.)

In his second state post-conviction petition, Contreras-Armas alleged that he "was deprived of his constitutional right to effective assistance of counsel when appellate counsel failed to file an appeal of the denial of [his first] post-conviction petition." (ECF No. 23-4 at 25.) Because the issue in Contreras-Armas' second state post-conviction petition regarded his appellate counsel's actions—rather than his post-conviction counsel's actions, even though they were the same person—the Court finds that the Nevada Supreme Court misconstrued Contreras-Armas' claim in affirming the dismissal of his second state post-conviction petition. As such, because the Nevada Court of Appeals' decision was based on an unreasonable determination of the facts of Contreras-Armas' argument, this claim will be reviewed de novo. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires"); *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court,

1  that . . . the state court's decision was based on an unreasonable determination of the facts, we

2  evaluate the claim de novo.").

3  **3.  Analysis**

4  Turning first to Contreras-Armas' appellate counsel's representation,[9] it appears that she

5  attempted to appeal both the judgment of conviction and the denial of the remaining grounds in

6  the first state post-conviction petition. In her case appeal statement, she stated, *inter alia*, that she

7  "represented Mr. Contreras-Armas at the District Court stage of the post-conviction, and continues

8  to represent Mr. Contreras-Armas on *this appeal from the denial of post-conviction relief* and

9  belated appeal from the Judgment of conviction." (ECF No. 40-1 at 5.) In her docketing statement,

10  Contreras-Armas' appellate counsel included, *inter alia*, the following issue on appeal: "The

11  District court abused its discretion when it failed to grant a hearing on the allegations raised in the

12  petition for writ of habeas corpus (post-conviction)." (ECF No. 40-3 at 6.) And in her opening

13  brief, Contreras-Armas' appellate counsel stated that "[t]his case is a direct appeal from a belated

14  appeal" and "[t]his case is also an appeal from the denial of post-conviction relief." (ECF No. 40-

15  8 at 12.) However, as the Nevada Supreme Court appeared to say in its order affirming the

16  judgment of conviction, Contreras-Armas' appellate counsel needed to file another notice of

17  appeal—rather than relying on the district court clerk—for the dismissal of the grounds in his post-

18  conviction petition. (*See* ECF No. 40-20 at 2 n.1.)

19  Notwithstanding Contreras-Armas' appellate counsel's potential deficiency,[10] Contreras-

20  Armas fails to demonstrate prejudice. As this Court has already determined, the dismissed post-

21

22  [9] The *Strickland* "test applies to claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000).

23  [10] As this Court noted in its order on the motion to dismiss, it appears that Contreras-Armas should not have been procedurally barred under Nevada law from filing a second state post-conviction petition following the affirmation of his judgment of conviction. *See* Nev. R. App. P. 4(c)(5) ("A

conviction claims from Contreras-Armas' first state post-conviction petition—grounds 5, 8, and 9 of the instant federal petition—were not substantial, meaning Contreras-Armas would not have prevailed on such an appeal if it had been properly filed. *Strickland*, 466 U.S. at 694; *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (explaining that the *Strickland* standard is also utilized to review appellate counsel's actions: a petitioner must show "that [appellate] counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them" and then "that, but for his [appellate] counsel's unreasonable failure to file a merits brief, [petitioner] would have prevailed on his appeal"); *Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal."); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").

Contreras-Armas is denied federal habeas relief for ground 10.[11]

---

habeas corpus petition filed after a direct appeal conducted under this Rule shall not be deemed a 'second or successive petition' under NRS 34.810(2)."). As such, Contreras-Armas' appellate counsel could have strategically determined that it was in Contreras-Armas' interest to wait to seek relief for his ineffective-assistance-of-counsel claims by filing a second state post-conviction petition after his direct appeal was decided.

[11]Contreras-Armas requests that this Court conduct an evidentiary hearing. (ECF No. 28 at 21.) This Court has already determined that Contreras-Armas is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect this Court's reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734 (2022) (holding that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. § 2254(e)(2)'s stringent requirements under AEDPA); 28 U.S.C. § 2254(e)(2). Contreras-Armas' request for an evidentiary hearing is denied.

1   **IV.   CERTIFICATE OF APPEALABILITY**

2        This is a final order adverse to Contreras-Armas. Rule 11 of the Rules Governing Section

3   2254 Cases requires this Court to issue or deny a certificate of appealability (COA). This Court

4   has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.

5   *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under 28

6   U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing

7   of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner

8   "must demonstrate that reasonable jurists would find the district court's assessment of the

9   constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing

10  *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue

11  only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of

12  a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

13       Applying these standards, this Court finds that a certificate of appealability is unwarranted.

14  **V.   CONCLUSION**

15       IT IS THEREFORE ORDERED that the second amended petition for a writ of habeas

16  corpus under 28 U.S.C. § 2254 **[ECF No. 28] is denied**.

17       IT IS FURTHER ORDERED that a certificate of appealability is denied.

18       IT IS FURTHER ORDERED that the Clerk of Court is directed to substitute Tim Garrett

19  for Respondent Renee Baker, enter judgment accordingly, and close this case.

20       Dated: February 28, 2023

21

22  HOWARD D. MCKIBBEN
    UNITED STATES DISTRICT COURT

23